MEGUIAR, Trustee, etc., *v.* GROVES and others.

*(District Court, D. Kentucky. March 4, 1880.)*

SURETIES—CHATTEL MORTGAGE—EXTENSION OF TIME OF PAYMENT—EVIDENCE.—A chattel mortgage, partly given to secure a pre-existing debt, will not discharge the sureties of the debtor, unless such mortgage purports upon its face to extend the time of the payment of the debt for a definite period.

*W. O. & J. L. Dodd,* for plaintiff.

*D. W. Armstrong,* for defendants.

BROWN, J. This is a bill in equity to foreclose a mortgage given by Meriah L. Mayes and John B. Mayes, her husband, to F. S. J. Ronald, of whom the complainant is trustee in bankruptcy. This mortgage was given by Mayes and wife, upon the property of the wife, to secure a note for $2,000, dated January 26, 1875, payable to Ronald, and made by Groves as principal, and Mayes and wife as sureties. Mayes and wife have answered, and pleaded in defence (1) the coverture of Meriah L. Mayes at the date of the note and mortgage; (2) that the mortgage was without consideration as to the said Meriah L. Mayes and John B. Mayes, but was given

for the accommodation of Groves, to secure an antecedent indebtedness; (3) that in consideration of a mortgage from Groves to Ronald, made September 18, 1876, to secure the same debt and a further indebtedness of $1,000, the said Ronald bound himself to, and did extend the time to, Groves within which to pay said note, and agreed to forbear suit thereon without the knowledge and consent of said sureties, and that they were thereby released; (4) that the said Groves has paid on account of said note, on the sixteenth of November, 1876, $400, and on the fourteenth of February, 1877, $739.65; (5) that Groves shipped tobacco to Ronald for sale sufficient to pay said note, and instructed him to so apply it, which he failed to do.

So far as the foreclosure is concerned, the first, second and fifth defences were abandoned upon the hearing. The claim of payment of $400 on the sixteenth of November, 1876, set up in the fourth defence, was also abandoned, the proof being clear that Groves paid Ronald the $400 as a part and on account of a purchase that day made by Ronald, of Groves & Shurley, for Groves' accommodation. It seems that Groves & Shurley claimed that Groves was indebted to them in about the sum of $5,000; that Ronald undertook to settle and did settle the claim for $1,100, and paid $500 in cash, of which Groves advanced him $400 on the sixteenth of November, 1876.

The payment of $739.65 of February 14, 1877, is still insisted upon, but, in my opinion, it is not made out by a preponderance of testimony that such payment was ever applied, or intended to be applied, upon the note in suit. Defendant Groves was a farmer and tobacco speculator, and Ronald was the senior member of the firm of Ronald & Co., composed of F. S. J. Ronald and his son W. A. Ronald.

The business of this firm was that of tobacco warehousemen and commission merchants. In January, 1875, Groves applied to them to advance him money to be used by him in the purchase of tobacco, which he was to consign to them. They exacted of him a reasonable security, as indemnity against loss, before they would open an account with him,

and the note and mortgage in controversy were given, and Ronald & Co. appeared to have advanced him, upon the day following the execution of the note and mortgage, $2,000, and other sums thereafter to the aggregate amount of about $12,000, from which, deducting credits of somewhat over $9,000, there is still claimed to be a balance due of $3,500. The relative business of the two parties consisted in Groves making purchases of tobacco upon advances made by Ronald & Co., and consigning the tobacco to them at Louisville for sale; when sold, the amount would be credited upon Groves' indebtedness to them.

On the twenty-third of January, 1877, Ronald, Webb & Co., the successors of Ronald & Co., were adjudged bankrupt, and complainant was, by consent of their creditors, chosen trustee. The payment was made to complainant on February 14 of the same year. Meguiar swears that Groves shipped him tobacco which sold for $900, without any direction as to the proceeds; that when he sold it Groves was present, and wanted all the net proceeds; that he handed him $160 in cash, and told him he would credit the balance on his account, then held by him as trustee, to which no objection was made by Groves, and it was so credited. Groves swears that he instructed Meguiar to apply this upon the Mayes note. Meguiar admits a conversation of this kind, but says it took place several months after he had received the money, and applied it generally upon Groves' account; that having given the credit upon the account generally, he refused to change it. This theory seems to me much the more probable, not only because such had been the general course of their buiness, but also from the fact that Meguiar did not have the Mayes note, nor know of its existence at the time the sale of the tobacco was made, and indeed did not even have the note when, as he says, Groves, several months afterwards, requested him to credit the amount upon it.

The more serious question in this case arises from the alleged extension of time and consequent release of the sureties, by reason of a chattel mortgage given on September 18,

1876, to W. A. Ronald, the surviving partner of Ronald & Co., for $3,000. Groves swears positively that, finding himself indebted to Ronald in somewhat over $3,000, an agreement was made to extend the time on the Mayes note, and forbear suit, without the knowledge and consent of the sureties, by giving a chattel mortgage upon a quantity of live stock then owned by him, it being understood, as he says, that the live stock should remain in his possession, and, when fattened and sold, the proceeds should be paid over to Ronald in settlement of his claim. It seems, however, that the hogs all died of cholera, and the mortgage, when foreclosed, realized less than $200.

Did the giving of this mortgage extend the time for the payment of the Mayes debt? It certainly did not upon its face. It recites "that whereas, the said Groves is indebted to said Ronald in the sum of $3,000, *now due and payable:* Now, to secure the due payment of said sum, the said Groves hereby sells and conveys unto the said Ronald, etc. * * * *provided,* however, should the said Groves pay, or cause to be paid, the sum of $3,000, and the interest thereon, then this mortgage to be null and void, otherwise to remain in full force and effect."

It is well settled that, in order to release sureties, the agreement to extend the time must not only be given for a consideration, but it must be a *binding* agreement. There is evidence in this case tending strongly to show that this mortgage was in reality made by Groves to protect his property from his other creditors; but, granting that the mortgage was executed for a valuable consideration, was there a binding agreement to extend the time?

As before observed, the mortgage does not purport to do so upon its face. No time is fixed for payment, and the rule in such cases is that the paper is payable immediately. 1 Dan. on Negotiable Instruments, §§ 88, 599; *Cornell* v. *Moulton,* 3 Den. 12. And parol evidence is not admissible to show that it was to be paid at a future date. *Thompson* v. *Ketchum,* 8 John. 190; 1 Par. on Bills, 381; 2 Phillips on Evidence, 675; 1 Dan. on Negotiable Instruments, § 80. So, if a prom-

issory note be made payable on demand, evidence that it was payable at some other time, or upon a contingency, is inadmissible. 2 Par. on Bills, 504; 1 Dan. on Negotiable Instruments, § 80; *Free* v. *Hawkins,* 8 Taunt. 92; *Woodbridge* v. *Spooner,* 3 B. & Ald. 283.

These authorities seem to demonstrate that, if Ronald had seen fit the next day to file a bill to foreclose this mortgage, Groves could not have shown in defence a parol agreement that no action should be taken upon it until his stock had been sold. If such be the case, then it clearly did not operate to extend the time for the payment of Mayes' debt. Again, in order to release the sureties the extension must be for a *definite* time. Brandt on Guaranty, § —.

I think it extremely doubtful whether, upon Grove's own statement, the time for payment was fixed with sufficient certainty. It depended upon a contingency which might happen within a week, and might be postponed for months.

I think the complainant is entitled to a decree.